**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| ANGEL MONGOLLAN, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,* | Case No.: |
| Plaintiff, | |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| GOURMET DELI GRILL CORP. f/d/b/a AVENUE DELI, DELI & GROCERY FOOD INC. c/d/b/a FRESH FOOD DELI & GRILL, and JOHN DOES 1-5, | Jury Trial Demanded |
| Defendants. | |

Plaintiff ANGEL MONGOLLAN, ("Plaintiff"), on behalf of himself and others similarly situated, hereby files this Class and Collective Action Complaint against Defendants GOURMET DELI GRILL CORP f/d/b/a AVENUE DELI and DELI & GROCERY FOOD INC., d/b/a FRESH FOOD DELI & GRILL (the "Corporate Defendants") and JOHN DOES 1-5 (the "Individual Defendants", and collectively with the Corporate Defendant, the "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from

Defendants: (1) unpaid overtime premiums, (2) unpaid wages, including overtime wages, due to timeshaving, (3) liquidated damages, and (4) attorneys' fees and costs.

2.    Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime premiums, (3) unpaid wages, including overtime wages, due to timeshaving, (4) unpaid spread of hours premiums, (5) statutory penalties for Wage Theft Prevention Act ("WTPA") violations, (6) liquidated damages, and (7) attorneys' fees and costs.

3.    Plaintiff further alleges that, pursuant to the Earned Safe and Sick Time Act N.Y.C.R.R § 20-911 *et seq*, Defendants violated the rights of their employees when they failed to pay for employees' statutorily entitled sick and/or safe leave and that he and others similarly situated are entitled to recover from Defendants: (1) statutory penalties, (2) compensatory damages, (3) punitive damages, and (4) attorney's fees and costs.

4.    Plaintiff further alleges that pursuant to the Internal Revenue Code, 26 U.S.C. § 7434 ("IRC"), he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

5.    Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also allege that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

8.      Plaintiff ANGEL MONGOLLAN is a resident of Kings County, New York.

9.      Corporate Defendant GOURMET DELI GRILL CORP. is a domestic business corporation duly organized under the laws of the State of New York with a former principal place of business and current address for service of process located at 2950 Avenue U, Brooklyn, NY 11229.

10.      Corporate Defendant DELI & GROCERY FOOD INC. is a domestic business corporation duly organized under the laws of the State of New York with a current principal place of business and address for service of process located at 2950 Avenue U, Brooklyn, NY 11229.

11.      At all relevant times, Corporate Defendants engaged in an enterprise whose annual volume of sales made or business done is not less than $500,000. Accordingly, the Defendants are subject to the jurisdiction of the FLSA.

12.      At all relevant times, Corporate Defendants were and continue to be "enterprise(s) engaged. . . in the production of goods for commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

13.      At all relevant times, Defendants operated a local grocery and deli shop located at 2950 Avenue U, Brooklyn, NY 11229 (the "Deli"), which provide deli products and produces to retail consumers.

14.    Throughout the relevant period, the Deli has changed business names and ownership. The Deli was first named "Avenue U Deli" and owned/operated by Corporate Defendant GOURMET DELI GRILL CORP. and an unknown number of JOHN DOES (collectively, the "Predecessor Defendants"), from the beginning of the relevant period until around August 2023, when Corporate Defendant DELI & GROCERY FOOD INC. and the remaining JOHN DOES (collectively, the "Successor Defendants") took ownership and renamed the deli to "Fresh Food Deli & Grill".

15.    While Predecessor Defendants were Plaintiff's employer, they subjected employees to numerous unlawful wage policies. When Successor Defendants took ownership of the Predecessor Defendants' business around August 2023, Successor Defendants continued operating the Deli with most of Predecessors' same business operations and employment conditions, other than on (1) unlawful wage policy (Predecessor Defendants' compensation of below-minimum wage rates, a policy which Successor Defendants later used again in 2024). Successor Defendants also retained Predecessor Defendants' employees, including Plaintiff, FLSA Collective Plaintiffs, and the Class.

16.    The Successor Defendants operate the Deli business with a substantial amount of continuity that clearly holds them responsible for Plaintiff's claims of damages against the Predecessor Defendants.

17.    JOHN DOES 1-5 are the individuals who owned and operated the Deli throughout the relevant period. Plaintiff is currently unable to identify the names and number of these individuals, but estimates that there were approximately five individual owners of the Deli throughout his employment at the Deli. Plaintiff intends to identify these individuals through discovery.

18.     At all relevant times, JOHN DOES 1-5 were Owners and Operators of the Deli.

19.     At all relevant times, JOHN DOES 1-5 exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

20.     At all relevant times, JOHN DOES 1-5 had and exercised the power and authority to (i) employ and terminate employees and managers, (ii) determine their hourly rates or salaries, frequency of payments, and means of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect the qualities of their employments, and (v) directly or indirectly maintained their employment records.

21.     At all relevant times, JOHN DOES 1-5 frequently visited the Deli to (i) inspect the business operations,  quality of customer service, and quality of food and hygiene of the Deli, (ii) manage the operations, sales, and logistics of the Deli, (iii) pick up or drop off supplies, ingredients, or administrative paperwork, (iv) personally supervise employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) and managerial staff and monitor their individual performances of duties and behaviors, and (v) directly or indirectly reprimand any employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior.

22.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members could each complain to JOHN DOES 1-5 (via direct contact during their visits to the Deli) directly regarding any of the terms of their employments, and JOHN DOES 1-5 would have had the authority to directly affect any changes to the quality and terms of their employments.

23.     At all relevant times, JOHN DOES 1-5 exercised functional control over the business and financial operations of the Deli.

24.     At all relevant times, JOHN DOES 1-5 would regularly ask workers such as Plaintiff, FLSA Collective Plaintiffs, and Class Members how things were going and whether there should be any issues they should be concerned about.

25.     At all relevant times, JOHN DOES 1-5's roles and decisions made in connection to their roles directly affected the nature, conditions, and circumstances of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' employments.

26.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

27.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTION ACTION ALLEGATIONS

28.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt deli employees, including, but not limited to cooks, food preparers, counter staff, cashiers, deliverers, and floor staff, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

29.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated have had substantial job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules all culminating in a willful failure and refusal to pay: (1) proper overtime premiums for all hours worked beyond 40 hours per week and (2) proper wages, including overtime, due to timeshaving.

30.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

31.    Plaintiff brings claim for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to cooks, food preparers, counter staff, cashiers, deliverers, and floor staff, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

32.    The Class Members are readily ascertainable. The number of Class Members and each of their identities are determinable from the records of Defendant. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

33.    The proposed Class is so numerous that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons are unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty members of the Class.

34.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime premiums, (ii) failing to pay proper minimum wages in accordance to 12 N.Y.C.R.R. § 142, (iii) failing to pay proper wages, including overtime, due to timeshaving, (iv) failing to pay spread of hours premiums, (v) failing to provide safe and sick time compensation; (vi) failing to provide wage and hour notices, at date of hiring, per requirements of the NYLL, and (vii) failing to provide proper wage statements per requirements of the NYLL.

35.     Defendants' policies and practices affected all Class Members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

36.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

37.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of efforts and expense that numerous individual actions engender.

Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members are to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues to this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.     Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b.   What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members;

c.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d.   Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e.   Whether Defendants paid Plaintiff and Class Members proper wages and premiums for all hours worked, including overtime hours;

f.   Whether Defendants paid Plaintiff and Class Members proper spread of hour premiums for workdays exceeding ten (10) hours;

g.   Whether Defendants properly compensated safe and sick time pay to Plaintiff and Class Members;

h.   Whether Defendants provided wage and hour notices to Plaintiff and Class Members, at the date of hiring and annually, per requirements of the NYLL; and

i.   Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL.

## STATEMENT OF FACTS

**I.   Background of Plaintiff's Employment**

40.   In or around December 2018, Plaintiff was hired by Predecessor Defendants to work as a deli sandwich maker at Defendants' Deli at 2950 Avenue U, Brooklyn, NY 11229. In or around August 2023, Successor Defendants took ownership of the Deli and became Plaintiff's

employers. Plaintiff's employment with Successor Defendants was terminated in or around October 2024.

41.    At all relevant times, Plaintiff was scheduled by Defendants to work six (6) days per week, Mondays through Saturdays, for ten (10) hours per day from 6:00 AM until 4:00 PM, for a total of sixty (60) hours per week. Additionally, approximately twice a month, Plaintiff was required to work on Sunday from 6:00 AM until 4:00 PM.

42.    From the start of his employment until around August 2023, Plaintiff was paid by Predecessor Defendants at an hourly rate of ten dollars ($10.00) per hour for all hours worked. From around August 2023 until the end of his employment, Plaintiff was paid by Successor Defendants at an hourly rate of fifteen dollars ($15.00) per hour for all hours worked.

43.    At all relevant times, Plaintiff's weekly wages were paid by Defendants in cash.

## II.    Plaintiff's Unpaid Minimum Wages Claim

44.    At all relevant times, Defendants failed to compensate Plaintiff and Class Members at the prevailing New York City minimum wage rates, in violation of the NYLL.

45.    Throughout most of Plaintiff's employment, Defendants improperly paid Plaintiff below the prevailing minimum wage. At all times which Predecessor Defendants paid Plaintiff at $10.00 per hour, Predecessor Defendants improperly paid Plaintiff below the prevailing minimum wage of $15.00 per hour. Throughout all of Plaintiff's employment during 2024, Successor Defendants improperly paid Plaintiff below the prevailing minimum wage of $16.00 per hour.

46.    At all relevant times, Defendants similarly failed to compensate Class Members at the prevailing New York City minimum wage rates.

### III.    <u>Plaintiff's Unpaid Overtime Premiums Claim</u>

47.    At all relevant times, Defendants failed to compensate proper overtime premiums to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all their hours worked over 40 each workweek, in violation of the NYLL and the FLSA.

48.    At all relevant times, Defendants failed to compensate Plaintiff any overtime premiums for all his hours worked over 40 per workweek. Instead, Defendants compensated these hours at Plaintiff's regular hourly rates.

49.    At all relevant times, Defendants similarly failed to compensate overtime premiums to FLSA Collective Plaintiffs and Class Members for all their overtime hours worked.

50.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members for all earned wages in accordance with the NYLL and the FLSA.

51.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class Members overtime premiums for all hours worked in excess of forty (40) in each workweek.

52.    Defendants knew that Plaintiff was scheduled to work over forty (40) hours per week, as Defendants were the ones to create such schedules. Defendants therefore knew that any failure to pay wages would also cause a failure to pay overtime wages.

### IV.    <u>Plaintiff's Unpaid Wages due to Timeshaving Claim</u>

53.    At all relevant times, Defendants failed to compensate proper wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked due to a policy of timeshaving, in violation of the NYLL and the FLSA.

54.     At all relevant times, Plaintiff was required by Defendants to work additional unscheduled hours after his shifts ended, for up to forty-five (45) minutes, every day. However, Defendants always only paid Plaintiff for his scheduled hours, and failed to compensate these unscheduled hours. Because Plaintiff was already scheduled to work 60 hours per week, these unpaid hours were always unpaid overtime hours for Plaintiff.

55.     At all relevant times, Defendants similarly required FLSA Collective Plaintiffs and Class Members to work additional unscheduled hours and failed to compensate FLSA Collective Plaintiffs and Class Members for all unscheduled hours they worked.

**V.      Plaintiff's Unpaid Spread of Hours Premiums Claim**

56.     At all relevant times, Defendants failed to provide Plaintiff and Class Members with their proper spread of hours premiums owed for workdays lasting ten or more hours, in violation of the NYLL.

57.     At all relevant times, as described above, Plaintiff was required by Defendants to work up to 10 hours and 45 minutes every day. However, Defendants always failed to provide any spread of hours premiums to Plaintiff for each workday lasting over 10 hours.

58.     At all relevant times, Defendants similarly failed to provide any spread of hours premiums to Class Members for their workdays lasting ten or more hours.

**VI.     Plaintiff's IRC Violations Claims**

59.     At all relevant times, Defendants failed to file proper tax filings on behalf of Plaintiff and FLSA Collective Plaintiffs, in violation of the IRC.

60.     At all relevant times, Defendants had a policy of paying Plaintiff, FLSA Collective Plaintiffs, and Class Members in cash and not issuing any statements with regards to proper federal

tax deductions. As a result, Defendants failed to issue W-2 forms to Plaintiff, FLSA Collective Plaintiffs, and Class Members as required by federal law.

61.     Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and FLSA Collective Plaintiffs . In failing to account for these monies in their IRS filings, Defendants failed to file proper W-2s in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for statutory penalties to Plaintiff and FLSA Collective Plaintiffs for each fraudulent filing, which would have to be at least once per year.

**VII.     Plaintiff's Breach of Contract and Unjust Enrichment Claims**

62.     By violating the Internal Revenue Code by failing to provide W-2 Forms. Defendants breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

63.     Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

64.     As a result, Plaintiff and Class Members will either (1) be liable to the IRS for employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

65.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

66.     Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

VIII.    **Plaintiff's WTPA Violations Claims**

67.    At all relevant times, Defendants failed to provide Plaintiff and Class Members with proper wage statements and wage notices, in violation of the NYLL and the WTPA.

68.    Defendants never provided Plaintiff and Class Members with wage notices at their times of hiring, or at any times thereafter, as required by New York Lab. Law § 195(1).

69.    Plaintiff and Class Members did not receive proper wage statements from Defendants, as required under the NYLL. At all relevant times, Defendants paid Plaintiff and Class Members in cash without any proper paystubs or wage statements. The payments did not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages, as required by New York Lab. Law § 195(3).

70.    Defendants directly violated the Wage Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendants knowingly and willfully operated their business with a policy of not providing wage notices and providing inaccurate wage statements to Plaintiff and Class Members.

71.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately

deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

72.    Had Defendants provided Plaintiff and Class Members with proper wage statements containing a detailed breakdown of Plaintiff's regular and overtime hours and listing Plaintiff's regular and overtime rates, as required under NYLL § 195(3), it would have been self-evident that Plaintiff was being underpaid.

73.    Faced with this undeniable proof of their unlawful wage practices, Defendants would have had to either (a) increase Plaintiff's wages to the legally required amount or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiff was underpaid, which would readily inculpate Defendants in court. Either possibility would have allowed Plaintiff to more effectively vindicate his rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

74.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

75.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

76.    Because Defendants did not produce proper wage statements containing the actual wages to which Plaintiff was entitled (and the proper deductions), Defendants could not report to the IRS and Social Security Administration, through proper W-2s, Plaintiff's proper earnings for the year, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial

District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

77.      The effect of not reporting or underreporting wages on an employees' W-2 was, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

78.      "In the wake of the Supreme Court's decision in TransUnion, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar.

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

79.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with proper wage statements entailed "concrete, downstream consequences" involving monetary injury, because the direct effect was to reduce Plaintiff and Class Members' entitlement to social security.

80.     Courts agree that the misreporting of earnings constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

81.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees, rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.

Plaintiff and Class Members lost benefits by virtue of how Defendants reported, or failed to report, their income, which was in turn caused by the absence of legally compliant wage statements. That is why "Plaintiff[] [has] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

82.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

83.     Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent either failed to send a W-2 to the IRS or sent a W-2 that underreported Plaintiff's true earnings. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)). In either case, this was the result of Defendants' failure to issue legally compliant wage statements.

## IX.     Plaintiff's ESSTA Violations Claims

84.     At all relevant times, Defendants failed to provide Plaintiff and Class Members with safe and sick leave pay, in violation of the NYLL and the ESSTA.

85.     Numerous times throughout Plaintiff's employment, Plaintiff required safe and/or sick leave which the NYLL and the ESSTA covered and required Defendants to compensate Plaintiff for. However, Defendants never offered or provided any compensation to Plaintiff for any of his safe and/or sick leaves covered by the NYLL and the ESSTA. As a result, Plaintiff's only option throughout his entire employment was to take unpaid leaves each time he required a safe and/or sick leave.

86.     At all relevant times, Defendants similarly failed to offer and provide compensation to Class Members for their covered safe and/or sick leaves.

87.     Defendants violated the NYLL and the ESSTA each time they denied compensation to Plaintiff and Class Members for their covered safe and sick leaves.

88.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services if Plaintiff prevails.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

**(Brought on Behalf of Plaintiff and FLSA Collective Plaintiffs)**

89.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     At all relevant times, Defendants were and continue to be employers engaged in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

91.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

92.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

93.     At all relevant times, Defendants had a policy and practice that failed to pay overtime premiums at the statutory rate of one and one-half times the normal hourly rate to Plaintiff

and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

94.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime wages, for all hours worked to Plaintiff and FLSA Collective Plaintiffs due to a practice of timeshaving, in violation of the FLSA.

95.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff and FLSA Collective Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

96.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

97.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

98.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

99.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, plus an equal amount as liquidated damages.

100.    Plaintiff and FLSA Collective Plaintiffs is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

### (Brought on behalf of Plaintiff and Class Members)

101.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

102.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

103.    Defendants knowingly and willfully failed to pay Plaintiff and Class Members proper minimum and overtime wages, in violation of the NYLL.

104.    Defendants knowingly and willfully failed to pay Plaintiff and Class Members proper wages, including overtime wages, due to timeshaving in violation of the NYLL.

105.    Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts worked in excess of ten (10) hours, in violation of the NYLL.

106.    Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL.

107.    Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the NYLL.

108.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid minimum wages, unpaid overtime wages, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## INTERFERENCE UNDER
## THE EARNED SICK AND SAFE TIME ACT

**(Brought on behalf of Plaintiff and Class Members)**

109.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

110.    Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper paid safe and sick leaves as required under the ESSTA.

111.    Under the ESSTA, "employers with between five and ninety-nine employees in any calendar year, each employee shall be provided with up to forty hours of paid sick leave in each calendar year." NY Lab. Law § 196-B(1)(b). Accordingly, Defendants are employers under the provisions of the ESSTA.

112.    Defendants are required to give employees safe and paid leave upon oral or written request for "a mental or physical illness, injury, health condition of such employee or such employee's family member, regardless of whether such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NY. Lab. Law § 196-B(4)(a).

113.    Due to Defendants' NYLL and ESSTA violations, Plaintiff and Class Members are entitled to recover from Defendants liquidated damages equal to double the unpaid sick leave wages, pursuant to the NYLL and the ESSTA.

## COUNT IV

## CIVIL DAMAGES FOR FRAUDULENT FILING OF
## INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

**(Brought on behalf of Plaintiff and FLSA Collective Plaintiffs)**

114.    Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein:

115.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other persons, such person may bring a civil action for damages against the persons so filing such returns." 26 U.S.C. § 7434(a).

116.    By purposely failing to provide Plaintiff and FLSA Collective Plaintiffs with accurate IRS Forms W-2s for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and FLSA Collective Plaintiffs as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

117.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## <u>COUNT V</u>

## <u>BREACH OF CONTRACT</u>

### (Brought on Behalf of Plaintiff and Class Members)

118.    Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

119.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance . . . This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits

of the contract . . . [T]he duties of good faith and fair dealing . . . encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *311 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

120.    When Plaintiff and Class Members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty to abide by the Internal Revenue Code and pay all required FICA taxes.

121.    Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash without withholdings or deductions, and not file any tax filings on their behalf. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf, but did not.

## COUNT VI

## UNJUST ENRICHMENT

### (Brought on Behalf of Plaintiff and Class Members)

122.    Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

123.    To state a claim for unjust enrichment, a plaintiff must allege that "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Geogrgia Malone*

*& Co., Inc. v Rieder,* 19 N.Y.3d 511, 516, 973 N.E.2d 743, 950 N.Y.S. 2d 333 (2012) (internal quotations omitted).

124.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either: (1) be liable to the IRS for the employer's share, or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

125.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, the FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the ESSTA, the IRC, and New York State common law;

b.    A declaratory judgment that the practices complained herein are unlawful under 26 U.S.C. § 7414 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of Plaintiff and Class Members;

c.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.    An award of unpaid regular and minimum wages, due under the NYLL;

e.    An award of unpaid overtime wages and premiums, due under the FLSA and the NYLL;

f. An award of unpaid spread of hours premiums, due under the NYLL;

g. An award of statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434 for each violation;

h. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

i. Disgorgement from Defendants of all illegally retained sums that should have gone into Defendants' FICA contributions;

j. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

k. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA and the NYLL;

l. All applicable compensatory and punitive damages under the ESSTA;

m. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

n. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o. Designation of the action as a class action pursuant to F.R.C.P 23;

p. Designation of Plaintiff as Representative of the Class;

q. Designation of Plaintiff's Counsel as Class Counsel; and

r. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable as of right by jury.

Dated: May 14, 2025                                    Respectfully submitted,

                                                       **LEE LITIGATION GROUP, PLLC**

                                            By:    _/s/ C.K. Lee_____
                                                   C.K. Lee, Esq. (CL 4086)

                                                   148 West 24th Street, 8th Floor
                                                   New York, NY 10011
                                                   Tel.: (212) 465-1180
                                                   Fax: (212) 465-1181
                                                   *Attorneys for Plaintiff,*
                                                   *FLSA Collective Plaintiffs,*
                                                   *and the Class*