UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x
ANGEL MOGOLLAN,[1]

                                     Plaintiff,

         -against-

GOURMET DELI GRILL CORP. f/d/b/a AVENUE
DELI, DELI & GROCERY FOOD INC. c/d/b/a FRESH
FOOD DELI & GRILL, and JOHN DOES 1-5,

                                       Defendants.
----------------------------------------------------------------------x

REPORT AND
RECOMMENDATION

No. 25-CV-2710-NRM-JRC

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Angel Mogollan ("Mogollan" or "plaintiff") brings this wage-and-hour action against defendants Gourmet Deli Grill Corp. ("Gourmet Deli") and Deli & Grocery Food Inc. ("Deli & Grocery," and collectively, "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") § 650 *et seq.* *See generally* Compl., Dkt. 1. Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered defendants' default on July 1, 2025. *See* Clerk's Entry of Default, Dkt. 15. Currently pending before this Court, on a referral from the Honorable Nina R. Morrison, is plaintiff's motion for default judgment, seeking unpaid minimum and overtime wages, spread of hours premiums, statutory penalties and liquidated damages. *See* Order Referring Mot. dated August 4, 2025; Mot. for Default J., Dkt. 17; Proposed J., Dkt. 29-4; Pl.'s Damages Calculations ("Damages Calc."), Dkt. 29-3.

For the reasons described below, this Court respectfully recommends granting, in part, plaintiff's motion for default judgment.

---

[1] The Complaint is deemed amended to reflect the correct spelling of plaintiff's name – "Mogollan." *See* Aff. of Angel Mogollan ("Mogollan Aff.") ¶ 13, Dkt. 24.

**Factual Background**

The following facts are taken from the Complaint (Dkt. 1) and plaintiff's affidavit (Dkt. 24) and are accepted as true for purposes of the instant motion. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-89 (2d Cir. 2015).

Each of the corporate defendants (Gourmet Deli and Deli & Grocery) are organized under the laws of the State of New York and operated "a grocery and deli shop" located at 2950 Avenue U, Brooklyn, New York 11229. Compl. ¶¶ 9, 10, 13. First, Gourmet Deli owned and operated "Avenue U Deli" from the beginning of the relevant time period until August 2023, when Deli & Grocery "took ownership" and renamed the deli, "Fresh Food Deli & Grill." *Id.* ¶ 14. When Deli & Grocery "took ownership" of the deli business, they continued operating the deli with its predecessor's wage policies and retained the same employees. *Id.* ¶ 15.

In December 2018, Gourmet Deli hired plaintiff as a "deli sandwich maker." *Id.* ¶ 40. In August 2023, Deli & Grocery took ownership of the deli and became plaintiff's employer for the remainder of his employment, until October 2024. *Id.* Throughout his employment, plaintiff was scheduled to work six days per week, Monday through Saturday, for ten hours per day, from 6:00 a.m. to 4:00 p.m., for a total of 60 hours per week. *Id.* ¶ 41. In addition to his regular schedule, approximately twice per month, plaintiff was required to work on Sunday, from 6:00 a.m. until 4:00 p.m. *Id.* Finally, plaintiff alleges that he was required to work additional unscheduled hours after his regular shifts ended for up to 45 minutes every work day. *Id.* ¶ 54. Defendants failed to pay plaintiff for the unscheduled hours ("time shaving claim"). *Id.*

From 2018 through August 15, 2023, Gourmet Deli paid plaintiff $10 per hour for all

2

scheduled hours worked.  *Id.* ¶ 42; Pl.'s Damages Calculations ("Damages Calc."), Dkt. 29-3.[2]

From August 16, 2023 until the end of his employment, Deli & Grocery paid plaintiff $15 per

hour for all scheduled hours worked.  *See id.*  Defendants paid plaintiff in cash each week at the

rates above.  *See* Compl. ¶ 43.  Defendants paid plaintiff below the minimum wage, failed to pay

plaintiff an overtime premium for those hours he worked in excess of 40 per week, failed to pay

him for spread-of-hours and never provided plaintiff with a paystub or wage statement.  *See id.*

¶¶ 44-58, 67-83.

### Procedural Background

In the Complaint, plaintiff asserts causes of action for failing to pay him minimum and

overtime wages pursuant to the FLSA and NYLL (Counts I, II); failing to provide a wage notice

at the time of hire and detailed paystub information on paydays, under the Wage Theft

Prevention Act ("WTPA"), *see* N.Y. Labor Law §§ 195(1)(a), 195(3) (Count II); failed to pay

compensation under New York's spread of hours provision (Count II); and failed to pay sick

leave under New York City's Earned Safe and Sick Time Act (Count III).

Plaintiff had asserted additional claims for fraudulent filing of tax information returns

(Count IV), breach of contract (Count V), and unjust enrichment (Count VI), but plaintiff has

withdrawn those claims in response to this Court's Order to Show Cause.  *See* Resp. to Order to

Show Cause, Dkt. 23.  Further, since plaintiff's most recent motion papers do not seek damages

for failure to pay sick leave under the NYLL and New York City's Earned Safe and Sick Time

Act (Count III), that claim is deemed abandoned.  *See Moran v. Tacos El Gallo Giro Corp.*, No.

23-CV-8167, 2025 WL 2813675, at *24 (E.D.N.Y. Oct. 3, 2025) (recommending finding that

---

[2] Although plaintiff does not provide the exact date in August 2023 when Deli & Grocery assumed
ownership over the deli, plaintiff used August 16, 2023 as the operative date for purposes of calculating
damages.  *See* Damages Calc.

plaintiff has abandoned claim that was not included in proposed judgment or damages calculation); *see also* Proposed J.; Damages Calc.  Similarly, because plaintiff does not request or advance an argument in support of an award of pre-judgment interest, the undersigned declines to recommend such an award.  *See Moran*, 2025 WL 2813675, at *24 (collecting cases).

On May 14, 2025, plaintiff commenced this action against defendants Gourmet Deli and Deli & Grocery.  *See* Dkt. 1.  On May 20, 2025, plaintiff served each of the corporate defendants with the Complaint, via the New York Secretary of State.  *See* Dkts. 8, 9.

Based on the affidavits of service, this Court finds that plaintiff properly served the corporate defendants.  Rule 4 of the Federal Rules of Civil Procedure permits service on a corporation in a manner authorized by the law of the forum state.  *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  New York law provides for service of process on a corporation by personally delivering process to New York's Secretary of State.  *See* N.Y. Bus. Corp. Law § 306(b)(1).  In addition, Rule 4 provides for service on a "corporation . . . by delivering a copy of the summons and of the complaint to an officer, a managing agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  The New York Secretary of State qualifies as an "agent authorized by appointment or by law to receive service of process" under Rule 4.  *See Dacas v. Duhaney*, No. 17-CV-3568, 2023 WL 6297530, at *5 (E.D.N.Y. Sept. 8, 2023), *report and recommendation adopted*, 2023 WL 6294227 (E.D.N.Y. Sept. 27, 2023).

Defendants failed to answer the Complaint.  On July 1, 2025, the Clerk entered a Certificate of Default as to both corporate defendants.  *See* Dkt. 15.  On August 1, 2025, plaintiff filed the instant motion for default judgment, which Judge Morrison referred to the undersigned. On January 13, 2026, defendants failed to appear at a motion hearing despite having been served

4

with notice of the hearing.  *See* Min. Entry dated January 13, 2026; Aff. of Service, Dkt. 28.  To

date, defendants have not responded or otherwise appeared in this action.

## Discussion

### I.      Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a

default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  First, the

Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the

Clerk's record of the case.  Fed R. Civ. P. 55(a) ("When a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise, the clerk must enter the party's default.").  This first step is

nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second,

after the Clerk of the Court enters a defendant's default, if that party fails to appear or otherwise

move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a

default judgment.  *See* Fed R. Civ. P. 55(a), (b)(2).

Here, on July 1, 2025, the Clerk of the Court entered a certificate of default against the

defaulting defendants -- Gourmet Deli and Deli & Grocery -- after they failed to appear.  *See*

Dkt. 15.  To date, defendants have not appeared or moved to vacate the entry of default.

"Default judgments 'are generally disfavored and are reserved for rare occasions.'"  *City*

*of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*,

10 F.3d at 96).  Providing guidance as to when a default judgment is appropriate, the Second

Circuit has cautioned that since a default judgment is an extreme remedy, it should only be

entered as a last resort.  *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).  While the

Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of

5

the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. at 95. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labys., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor"). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the

6

case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Here, the defaulting defendants did not respond to the Complaint despite proper service. Plaintiff filed affidavits confirming service of the motion for default judgment, this Court's order scheduling a hearing on the motion, and the minute entry following the motion hearing. *See* Dkts. 20, 26, 28. Defendants have nonetheless failed to respond to plaintiff's motion for default judgment or otherwise appear in this action. Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under federal and state law.

## II. Liability

Plaintiff moves for default judgment on his claims under the FLSA and the NYLL. For the reasons set forth below, this Court concludes that plaintiff sufficiently alleges facts giving rise to liability.

### A. Statute of Limitations

As an initial matter, the Court must determine whether plaintiff's claims are timely. Originally, plaintiff requested damages under the NYLL from December 1, 2018 until October 31, 2024. *See* Pl.'s [Original] Damages Calculations, Dkt. 18-6. In response to this Court's show cause order, plaintiff limited his request to May 14, 2019 through October 31, 2024, since

7

the Complaint was filed on May 14, 2025.  *See* Resp. to Order to Show Cause, Dkt. 23.

The FLSA contains a two-year statute of limitations for non-willful violations, and a three-year statute of limitations for willful violations.  *See* 29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies."  *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citation omitted); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012).  Because defendants have defaulted, a three-year statute of limitations applies here.

Unlike the FLSA, "[a]ny action to recover upon a liability imposed by NYLL's Articles 6 and 19 must be commenced within six years."  *Martinez v. 2009 Bamkp Corp.*, No. 18-CV-7414, 2019 WL 7708607, at *4 (S.D.N.Y. Dec. 10, 2019) (quotation marks and citation omitted), *report and recommendation adopted*, 2020 WL 409691 (S.D.N.Y. Jan. 23, 2020); *see also* N.Y. Lab. Law §§ 198(3), 663(3).  Both statutes of limitations, and thus the period from which a plaintiff can recover under the FLSA and the NYLL, are calculated from the filing of the complaint.  *See Duchitanga v. 43 Ave Top N' Quality Corp.*, No. 17-CV-1145, 2021 WL 7906539, at *6-7 (E.D.N.Y. Sept. 13, 2021).

Since plaintiff filed the Complaint on May 14, 2025, plaintiff may recover damages arising out of his employment going back six years under the NYLL, or three years under federal law.  *See Luna v. Gon Way Constr.*, No. 16-CV-1411, 2017 WL 835321, at *9 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).  The Court adopts the relevant period for calculating damages as now proposed by plaintiff.  Here, plaintiff seeks to recover damages for NYLL violations from the period May 14, 2019 through October 31, 2024 (within the six-year limitations period from the filing of the initial Complaint

8

on May 14, 2025) to the end of his employment in October 2024, and for FLSA violations from May 14, 2022 to October 2024 (within the three-year limitations period).

### B.    FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019).  To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists and (2) the employment falls under the FLSA's individual or enterprise coverage provisions.  *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

### 1.    Employer/Employee Relationship

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* §§ 203(a); 203(g) (defining "employ" as "to suffer or permit to work").  The FLSA further defines the term "employee" as "any individual employed by an employer." *Id.* § 203(e)(1).  Absent a statutory exemption, employees are protected by the FLSA if they worked for a covered employer.  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer." *Herman*

*v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

"Courts afford the term employer "an expansive definition with 'striking breadth.'" *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-CV-1231, 2024 WL 4751732, at \*5 (S.D.N.Y. Oct. 22, 2024) (quoting *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at \*5 (S.D.N.Y. Mar. 9, 2020)), *report and recommendation adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024). To determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (quoting *Goldberg v. Whitaker House Co-op.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see also Baizan Guerrero*, 2019 WL 4889591, at \*4.

Plaintiff's unopposed allegations are sufficient to conclude that defendants each employed plaintiff under the definition of the FLSA. Plaintiff sufficiently alleges that Gourmet Deli and Deli & Grocery each owned and operated the deli at which plaintiff worked, and subjected their employees to unlawful wage policies. *See* Compl. ¶¶ 15, 16, 40. Thus, this Court finds that Gourmet Deli and Deli & Grocery each employed plaintiff under the definition of the FLSA. *See Ortega*, 2024 WL 4751732, at \*6 (finding similar allegations sufficient to find that corporation was employer, particularly where by defaulting, defendants admitted their status); *Sarmiento Perez v. Comhar Grp. LLC*, No. 19-CV-0964, 2020 WL 1364908, at \*3-4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Payamps v. M&M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at \*7 (E.D.N.Y. Dec. 9, 2019).

### 2.    Whether Plaintiff's Employment was Covered by the FLSA

Next, the Court must determine whether plaintiff's employment falls under the FLSA's individual or enterprise coverage provisions.  The FLSA's minimum wage and overtime provisions apply only to those "employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')." *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a)); *see Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam).  To properly plead enterprise coverage, a plaintiff must demonstrate that his employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently engaged in commerce or the production of goods for commerce, including "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."  29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see* 29 C.F.R. § 779.238.

Plaintiff's allegations are sufficient to conclude that defendants are subject to the FLSA.  First, plaintiff claims that defendants were directly engaged in interstate commerce.  *See, e.g.*, Compl. ¶¶ 11-13.  Second, plaintiff alleges that defendants had an annual gross volume of sales and business exceeding $500,000 during the relevant period.  *See id*. ¶ 11.  Courts in this District have held that conclusory allegations similar to those made here with respect to enterprise coverage are sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate" the enterprise was engaged in interstate commerce.  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see also Santos v. Cancun*

11

*& Cancun Corp.*, No. 21-CV-192, 2022 WL 1003812, at \*4 (E.D.N.Y. Feb. 17, 2022); *Wuzi Jiao v. Kitaku Japanese Rest., Inc.*, No. 16-CV-2694, 2020 WL 2527588, at \*5-6 (E.D.N.Y. Mar. 13, 2020), *report and recommendation adopted*, 2020 WL 2523109 (E.D.N.Y. May 18, 2020). Further, courts in this District have routinely inferred, even absent specific allegations, that companies engaged in the deli/supermarket industry are engaged in interstate commerce. *See Pena v. Super Econ. One Way Supermarket Corp.*, No. 20-CV-3060, 2021 WL 4755603, at \*5 (E.D.N.Y. Sept. 8, 2021) ("Given Super Economics' annual sales, it can be inferred that some of the materials sold in the supermarket originated in interstate commerce."), *report and recommendation adopted*, 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021); *Baizan Guerrero*, 2019 WL 4889591, at \*5 ("it is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales" is subject to enterprise coverage); *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-2520, 2018 WL 4782342, at \*3 (E.D.N.Y. Sept. 17, 2018), *report and recommendation adopted as modified*, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018).

Accordingly, this Court recommends finding that the allegations in plaintiff's Complaint are sufficient to conclude that plaintiff's employment falls under the FLSA's protections.

### C.    NYLL

As with the FLSA, the NYLL broadly defines an "employer." The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine . . . employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at \*5 (E.D.N.Y. Mar. 11, 2020) (internal quotation marks

12

and citation omitted), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020). Accordingly, the Court finds that plaintiff was employed by each of the corporate defendants under the NYLL. *See Mondragon v. Keff*, No. 15-CV-2529, 2019 WL 2551536, at *7-9 (S.D.N.Y. May 31, 2019), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019).

### D.     Joint and Several Liability

In addition to each corporate defendant being liable for the violations occurring during its own tenure as owner/operator, plaintiff further argues that Gourmet Deli and Deli & Grocery are jointly and severally liable for violations occurring between May 14, 2019 and August 2023, before Deli & Grocery purchased the business. *See* Supp. Mem. at 1-2, Dkt. 29.

Generally, "a successor is not responsible for the liabilities of its predecessor." *Chen v. DG & S NY, Inc.*, 406 F. Supp. 3d 216, 222 (E.D.N.Y. 2016). However, in certain circumstances, a court may find that a successor has either expressly or impliedly assumed the predecessor's liability. Courts have analyzed FLSA claims under a "substantial continuity" test and NYLL claims under a New York common law standard in determining whether a defendant may be held liable for a previous employer's labor law violation. *See Nguyen v. Pho Vietnam 87 Corp.*, No. 23-CV-4298, 2025 WL 564546, at *6 (S.D.N.Y. Jan. 31, 2025), *report and recommendation adopted*, 2025 WL 564546 (S.D.N.Y. Jan. 31, 2025); *Duchitanga*, 2021 WL 7906539, at *8.

"The substantial continuity test 'focuses on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the

13

predecessor's business operations.'"[3]  *Chen*, 406 F. Supp. 3d at 223 (quoting *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14-CV-4335, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015)).

Under the substantial continuity test, courts generally consider the following factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same [location]; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Duchitanga*, 2021 WL 7906359, at *8; *see Nguyen*, 2025 WL 564546, at *6.  No single factor is dispositive, but the first two factors are the "more significant."  *Duchitanga*, 2021 WL 7906359, at *8.  Ultimately, the determination is based on the totality of circumstances.  *Id.* at *9.

Here, plaintiff argues that Deli & Grocery had notice of Gourmet Deli's violations of the FLSA, and potential liability therefor, because it retained the same employees and continued Gourmet Deli's unlawful payroll practices after purchasing the business.[4]  *See* Compl. ¶ 15.  Accordingly, Deli & Grocery was or should have been aware of the existence of the labor violation and constructive notice is sufficient for purposes of substantial continuity in the FLSA context.  Because plaintiff's allegations are sufficient to show constructive knowledge, plaintiff has satisfied the first critical factor, notice.  *See Duchitanga*, 2021 WL 7906359, at *10; *Ji Li v. New Ichiro Sushi, Inc.*, No. 14-CV-10242, 2020 WL 2094095, at *5 (S.D.N.Y. Apr. 30, 2020), *aff'd*, 2021 WL 6105491 (2d Cir. Dec. 21, 2021); *Rotthoff v. New York State Cath. Health Plan,*

---

[3] Although the Second Circuit has not ruled directly on whether the substantial continuity test applies to FLSA claims, courts in this District have applied the test to such claims.  *See Duchitanga*, 2021 WL 7906539, at *8 (collecting cases); *see also Nguyen*, 2025 WL 564546, at *6 & n.1.

[4] In addition, plaintiff has submitted a judgment against Gourmet Deli dated March 11, 2020, due to its non-compliance with the Worker's Compensation Board of the State of New York.  *See* Judgment dated March 11, 2020, Supreme Court of the State of New York, County of Queens, Dkt. 29-1.

*Inc.*, No. 19-CV-04027, 2020 WL 5763862, at *7 (E.D.N.Y. Sept. 28, 2020).

As to the second factor, plaintiff claims that "although [] public inquiry shows Predecessor Defendant's registration status remains active, Predecessor Defendant is no longer in operation. With the deli being its sole business, it was shorn of all of its assets when it sold the business to the Successor Defendant." Pl. Supp. Mem. at 5. However, plaintiff did not raise these allegations in the Complaint and he has not supplemented the record to support his claim that Gourmet Deli's sale of the deli left it without any source of income or assets from which it could satisfy a judgment against it. This factor, therefore, is neutral. *See Duchitanga*, 2021 WL 7906359, at *11 & n.20 (noting that predecessor corporation is listed as being in active status with the Secretary of State); *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 95 (S.D.N.Y. 2017).

Otherwise, the remaining factors weigh in favor of finding successor liability. Plaintiff alleges that even after the business was sold from Gourmet Deli to Deli & Grocery, the deli remained at the same location, used the same equipment, employed the same people, including plaintiff, and continued to offer substantially the same services and products. *See Nguyen*, 2025 WL 564546, at *7; *Duchitanga*, 2021 WL 7906359, at *11; *Chen*, 406 F. Supp. 3d at 224; *see also Pareja v. 184 Food Corp.*, No. 18-CV-05887, 2021 WL 3109621, at *9 & n.9 (S.D.N.Y. July 22, 2021), *report and recommendation adopted*, *Pareja v. Food Corp.*, 2021 WL 3501229 (S.D.N.Y. Aug. 9, 2021). In addition, plaintiff alleges that the conditions of his employment did not change despite the change in ownership, including the unlawful pay practices at issue. *See id.* After balancing all of the relevant factors, the Court finds that plaintiff's allegations are sufficient to establish Deli & Grocery's successor liability under the FLSA.

However, plaintiff has not adequately alleged successor liability under the stricter

common law test for NYLL claims.  Under the common law test applicable to NYLL claims, "a business buyer is liable for the seller's debts only when "'(1) a buyer . . . formally assumes a seller's debts; (2) [the] transactions [are] undertaken to defraud creditors; (3) a buyer . . . de facto merged with a seller, [or] (4) a buyer . . . is a mere continuation of the seller.'" *Ngyuen*, 2025 WL 564546, at *6 (quoting *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003)).

Here, plaintiff does not allege that Deli & Grocery assumed the tort liability of Gourmet Deli or that Gourmet Deli sold the business to fraudulently avoid liability.  *See Duchitanga*, 2021 WL 7906359, at *12.  Nor does plaintiff allege that there was a merger of the two corporations or that the company has continued under the same ownership.  *See id.* ("de facto merger and mere continuation . . . both require continuity of ownership"); *Ramirez v. H.J.S. Car Wash Inc.*, No. 11-CV-2664, 2013 WL 1437600, at *5 (E.D.N.Y. Apr. 9, 2013) ("successor liability therefore cannot be imposed in the absence of continuity of ownership"); *see also New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 212 (2d Cir. 2006) (requiring continuity of ownership for de facto merger under New York common law); *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 46 (2d Cir. 2003) ("the doctrine of de facto merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership").  Accordingly, plaintiff cannot demonstrate that Deli & Grocery is jointly and severally liable for Gourmet Deli's NYLL violations.

Thus, the relevant time period for Deli & Grocery's successor wage and hour liability under the FLSA, for which it is jointly and severally liable with Gourmet Deli, is May 14, 2022 through the end of plaintiff's employment for Gourmet Deli in August 2023.

## E.    Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at a minimum hourly rate.  *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652.  The applicable minimum wage under the NYLL for a New York City employer with ten or fewer employees[5] was $13.50 per hour in 2019, $15.00 per hour from December 31, 2019 until December 31, 2023 and $16.00 per hour for 2024.  *See* N.Y. Lab. Law § 652(1)(a)(ii).  Given that the minimum wage under the NYLL is higher than that of the FLSA for all relevant time periods,[6] this Court analyzes plaintiff's minimum wage entitlement based on the New York City minimum wage.  *See* 29 C.F.R. § 778.5; *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 376 (E.D.N.Y. 2022); *Fermin*, 93 F. Supp. 3d at 43.

To determine whether plaintiff was paid the applicable minimum wage, the Court must first determine the plaintiff's regular hourly wage rate.  *See Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *11 (E.D.N.Y. Mar. 21, 2023); *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).  Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract."  29 C.F.R. § 778.108.  Because plaintiff was compensated on an hourly basis, the regular hourly rate is straightforward.  The compensation paid to plaintiff for his "normal, nonovertime workweek" of 40 hours per week is $10.00 per hour from the

---

[5] In the absence of any information regarding the size of the employer's workforce, the Court applies the rate for small employers.  *See Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17-CV-7095, 2019 WL 4739047, at *7 n.6 (E.D.N.Y. June 12, 2019), *report and recommendation adopted*, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019).

[6] The applicable federal minimum wage rate was $7.25.  *See* 29 U.S.C. § 206(a)(1)(C).

17

commencement of his employment until August 16, 2023, and $15.00 per hour thereafter.  *See Holder v. G&A Flaggers LLC*, No. 22-CV-7227, 2025 WL 1708086, at *9 (E.D.N.Y. Mar. 5, 2025); *Maldonado v. Papadopoulos*, No. 20-CV-6850, 2021 WL 5363016, at *4-5 (S.D.N.Y. July 17, 2021) (basing plaintiffs' regular hourly wages on the information provided in plaintiffs' affidavits), *report and recommendation adopted as modified*, 2021 WL 4596535 (S.D.N.Y. Oct. 6, 2021).

Since plaintiff's regular rate was lower than the applicable minimum wage from the commencement of his employment until August 15, 2023, and again during 2024, the Court recommends granting plaintiff's claim for unpaid minimum wages.

### F.    Overtime Wages

Under the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2).  Here, plaintiff alleges that he regularly worked for defendants for more than 40 hours per week, but was not paid the requisite premium for those overtime hours.  In addition, since plaintiff was already working more than 40 hours per week according to his regular schedule, he was entitled to overtime pay for the additional 45 minutes per day he worked unpaid.  *See Lopez v. Thermo Tech Mech., Inc.*, No. 20-CV-9113, 2023 WL 3756883, at *5-6 (S.D.N.Y. May 31, 2023), *report and recommendation adopted*, 2022 WL 4121480 (E.D.N.Y. Sept. 9, 2022); *Cuanetl v. Café H Inc.*, No. 21-CV-4316, 2022 WL 4124766, at *4 (E.D.N.Y. Aug. 9, 2022).  Thus, plaintiff has sufficiently alleged claims against the defendants for unpaid overtime under the FLSA and the NYLL.

18

### G.      Spread-of-Hours Premium

Another area in which the NYLL differs from the FLSA is the NYLL's requirement that an employer pay employees a "spread-of-hours" premium that is equal to "one additional hour of pay at the basic minimum hourly rate" for each day an employee works in excess of ten hours. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6; *see also id.* § 142-2.4 (non-hospitality workers). For hospitality workers, the spread of hours mandate applies "regardless of a given employee's regular rate of pay." *Id.* § 146-1.6(d). "A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in excess of ten hours on a given day but did not receive spread of hours pay." *See Martinez v. Golden Flow Dairy Farms Inc.*, No. 21-CV-2421, 2025 WL 3769328, at *7 (E.D.N.Y. Dec. 31, 2025) (internal quotation marks and citation omitted).

Plaintiff seeks recovery for spread of hours compensation for one hour's pay at the basic minimum hourly rate for each date that he worked more than ten hours. As plaintiff alleges that he worked for defendants more than ten hours per day throughout his employment, but was not paid spread of hours wages, he has sufficiently alleged a claim for relief.

### H.      Wage Theft Prevention Act

The NYLL's WTPA requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . .; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195(1)(a). In addition, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate

19

or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages." N.Y. Lab. Law § 195(3).

However, the Second Circuit has found allegations of technical violations of the WTPA's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing. Rather, a plaintiff must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024). Specifically, "a plaintiff must show some causal connection between the lack of accurate notices and the [injury] or harm" to plausibly allege a WTPA violation. *See id.* The plaintiff must "link the general harms an employee might experience to any harms that [the plaintiff] did, in fact, experience." *Id.* at 311 (quoting *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) (emphasis in original)). For example, a plaintiff may establish standing where he alleges that "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." *Guthrie*, 113 F.4th at 309.

Plaintiff sufficiently alleges that the defendants failed to provide him with the wage notice required by the WTPA, section 195(1)(a) of the NYLL. In addition, the Complaint sufficiently alleges that defendants failed to provide plaintiff with a proper wage statement, in violation of section 195(3) of the NYLL. In this case, plaintiff has explained how the failure to provide hiring and wage notices "led to [] a tangible injury." *See Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024). For example, plaintiff alleges that if defendants provided plaintiff with proper wage statements, breaking down regular and overtime hours, and listing plaintiff's regular and overtime rates, plaintiff would have discovered that his rights were violated. Compl. ¶¶ 72-73.

20

Plaintiff, therefore, alleges more than a bare statutory violation and has adequately stated claims for violations of the WTPA by the defendants. *See Abe v. Yamaguchi & Friends, Inc.*, No. 22-CV-3164, 2024 WL 3875779, at *10 (E.D.N.Y. Aug. 20, 2024) ("allegations that an employer's WTPA violations hindered an employee from vindicating her rights constitute the sort of 'downstream consequences' that can transform an informational injury into one that passes constitutional muster"); *Gunthorpies v. I.M. Grp., LLC*, No. 21-CV-5140, 2024 WL 2031191, at *8 (E.D.N.Y. Apr. 11, 2024), *report and recommendation adopted*, 2024 WL 2022688 (E.D.N.Y. May 7, 2024).

## III.    Relief

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Trustees of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). Plaintiff must establish that he is entitled to the damages sought for violations of the FLSA and NYLL.

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him [or her]." *Lu Nan Fan v. Jenny & Richard's Inc.*,

No. 17-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019) (internal quotation marks and citation omitted). Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn statements "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed," satisfies a plaintiff's burden of establishing how many hours he or she worked and how much he or she was paid. *See Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *8 (E.D.N.Y. Mar. 31, 2015) (relying on plaintiffs' sworn declarations as to rates of pay and estimates of hours worked). "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *15 (E.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified*, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022); *Fan*, 2019 WL 1549033, at *9.

Plaintiff has submitted his own sworn affidavit describing the dates of his employment, along with hours worked and the amount of wages he received. *See* Mogollan Aff. ¶¶ 3-7. In light of defendants' default, plaintiff's evidence on damages stands uncontroverted, and plaintiff has provided a sufficient basis upon which to determine damages.[7]

### A.    Unpaid Minimum Wages

As discussed above, plaintiff was paid below minimum wage for most of his

---

[7] Plaintiff does not seek an award of pre-judgment interest or attorney's fees. *See* Affirmation of C.K. Lee ("Lee Aff.") ¶ 27, Dkt. 18; Mogollan Aff. ¶ 16; Prop. J., Dkt. 29-4.

employment.  From May 14, 2019 to August 15, 2023, plaintiff was paid $10 per hour -- less

than the applicable $13.50 per hour minimum wage in 2019 and $15 per hour minimum wage

from 2020 to 2023.  From August 16, 2023 through December 31, 2023, plaintiff was paid $15

per hour in accordance with the applicable minimum wage.  However, from January 1, 2024 to

October 31, 2024, plaintiff was still paid $15 per hour -- less than the $16 per hour minimum

wage applicable to 2024.  Accordingly, based upon the hours worked and applicable wage rates,

this Court recommends awarding damages to plaintiff for unpaid minimum wages as follows:

**Unpaid Minimum Wages**
**Gourmet Deli[8]**

| Period | Weeks | Paid Wage | Minimum Wage | Min. Wage - Paid Wage | Hours | Total |
|---|---|---|---|---|---|---|
| 5/14/19 - 12/31/19 | 33[9] | $10 | $13.50[10] | $3.50 | 40 | $4,620.00 |
| 1/1/20 - 12/31/20 | 52 | $10 | $15 | $5 | 40 | $10,400.00 |
| 1/1/21 - 12/31/21 | 52 | $10 | $15 | $5 | 40 | $10,400.00 |
| 1/1/22 - 12/31/22 | 52 | $10 | $15 | $5 | 40 | $10,400.00 |
| 1/1/23 - 8/15/23 | 32 | $10 | $15 | $5 | 40 | $6,400.00 |
| Subtotal | | | | | | $42,220.00 |

**Deli & Grocery**

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/16/23 - 12/31/23 | 20 | $15 | $15 | $0 | 40 | $0.00 |
| 1/1/24 - 10/31/24 | 43 | $15 | $16 | $1 | 40 | $1,720.00 |
| Subtotal | | | | | | $1,720.00 |
| | | | | | | |
| **Combined Total** | | | | | | **$43,940.00** |

### B.     Unpaid Overtime Compensation

Under the FLSA and the NYLL, an employer must pay an employee overtime

---

[8] The Court calculates damages separately for the time plaintiff worked for Gourmet Deli (predecessor employer) and then for Deli & Grocery (successor employer).

[9] The Court calculates the relevant time period by rounding the number of weeks worked to the nearest whole number.

[10] The correct minimum wage rate during 2019 is $13.50, rather than $15.00 (Dkt. 29-3).

compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata*, 723 F.3d at 200 (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL). "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Baizan Guerrero*, 2019 WL 4889591, at *8 (internal quotation marks and citation omitted).

Here, plaintiff sufficiently demonstrates that the defaulting defendants did not pay him any overtime compensation during his employment. *See* Mogollan Aff. ¶ 5. Plaintiff states that, during a typical week, he worked 60 hours per week, pursuant to his regular schedule or 20 overtime hours per week (60 total hours - 40 hour workweek = 20 hours). *See id.* ¶ 4. In addition, twice per month, defendants required him to work a seventh day for 10 hours per day. *Id.* Thus, plaintiff should have received approximately 25 hours of overtime pay per week for his scheduled hours.[11]

Accordingly, based upon the scheduled hours worked and applicable overtime wage rate, this Court recommends awarding damages to plaintiff for unpaid overtime wages as follows:

---

[11] Even though plaintiff worked approximately 20 overtime hours during a typical six-day workweek, plaintiff also alleges that he worked a seventh day twice per month, for an additional 10 overtime hours each seventh day, for a total of 20 additional overtime hours per month. For purposes of calculating his unpaid overtime hours, plaintiff spread the additional 20 overtime hours over the course of four weeks. Specifically, plaintiff calculated five additional overtime hours per week by dividing 20 additional overtime hours worked each month by four weeks. Dkt. 29-3. Plaintiff then added five hours to the 20 overtime hours he typically worked per week for a total average of 25 overtime hours per week. Dkt. 29-3.

**Unpaid Overtime Wages**
**Gourmet Deli**

| Period | Weeks | Paid Wage | Overtime Rate | Overtime - Paid Wage | Overtime Hours | Total |
|---|---|---|---|---|---|---|
| 5/14/19 - 12/31/19 | 33 | $10.00 | $20.25[12] | $10.25 | 25 | $8,456.25[13] |
| 1/1/20 - 12/31/20 | 52 | $10.00 | $22.50[14] | $12.50 | 25 | $16,250.00 |
| 1/1/21 - 12/31/21 | 52 | $10.00 | $22.50 | $12.50 | 25 | $16,250.00 |
| 1/1/22 - 12/31/22 | 52 | $10.00 | $22.50 | $12.50 | 25 | $16,250.00 |
| 1/1/23 - 8/15/23 | 32 | $10.00 | $22.50 | $12.50 | 25 | $10,000.00 |
| Subtotal | | | | | | $67,206.25 |

**Deli & Grocery**

| Period | Weeks | Paid Wage | Overtime Rate | Overtime - Paid Wage | Overtime Hours | Total |
|---|---|---|---|---|---|---|
| 8/16/23 - 12/31/23 | 20 | $15.00 | $22.50 | $7.50 | 25 | $3,750.00 |
| 1/1/24 - 10/31/24 | 43 | $15.00 | $24.00[15] | $9.00 | 25 | $ 9,675.00 |
| Subtotal | | | | | | $13,425.00 |
| | | | | | | |
| **Combined Total** | | | | | | **$80,631.25** |

In addition to defendants' failure to pay an overtime premium for plaintiff's scheduled overtime hours, defendants failed to pay plaintiff entirely for 45 minutes per day past his regular schedule. *See* Mogollan Aff. ¶ 6. Accordingly, the Court calculates overtime wages for time-shaved overtime as follows:

**Time Shaving**
**Gourmet Deli**

| Period | Weeks | Overtime Rate | Overtime Hours | Total |
|---|---|---|---|---|
| 5/14/19 - 12/31/19 | 33 | $20.25 | 4.88[16] | $3,261.06 |
| 1/1/20 - 12/31/20 | 52 | $22.50 | 4.88 | $5,709.60 |
| 1/1/21 - 12/31/21 | 52 | $22.50 | 4.88 | $5,709.60 |
| 1/1/22 - 12/31/22 | 52 | $22.50 | 4.88 | $5,709.60 |
| 1/1/23 - 8/15/23 | 32 | $22.50 | 4.88 | $3,513.60 |
| Subtotal | | | | $23,903.46 |

---

[12] $13.50 (applicable minimum wage rate) x 1.5 = $20.25.

[13] ($20.25 (unpaid overtime amount) - $10 (amount paid)) x 25 overtime hours x 33 weeks = $8,456.53.

[14] $15.00 (applicable minimum wage rate) x 1.5 = $22.50.

[15] $16.00 (applicable minimum wage rate) x 1.5 = $24.

[16] Plaintiff correctly calculated 4.88 overtime hours per week based on plaintiff's affidavit stating that he worked an extra 45 minutes per workday, he regularly worked six days per week, and twice per month, he worked a seventh day (((45 minutes x 6 days per week) + (45 minutes x 2 days per month / 4 weeks)) = 292.50 minutes per week); 292.50 minutes / 60 = 4.88 hours). Mogollan Aff. ¶¶ 4, 6.

**Deli & Grocery**

| | | | | |
|---|---|---|---|---|
| 8/16/23 - 12/31/23 | 20 | $22.50 | 4.88 | $2,196.00 |
| 1/1/24 - 10/31/24 | 43 | $24.00 | 4.88 | $5,036.16 |
| Subtotal | | | | $7,232.16 |
| | | | | |
| **Combined Total** | | | | **$31,135.62** |

### C.     Spread-of-Hours Compensation

The NYLL provides that if the length of time between the beginning and end of an employee's workday (or the employee's "spread of hours") surpasses ten hours, the employer must pay the employee an additional hour of pay at the minimum wage.  *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017); *see also Pineda v. Tokana Café Bar Restaurant Inc.*, No. 16-CV-1155, 2017 WL 1194242, at *3 (S.D.N.Y. Mar. 30, 2017); 12 N.Y.C.R.R. § 146-1.6.  Unlike overtime compensation, "spread of hours" includes "working time plus time off for meals plus intervals off duty."  *Leon Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *9 (quoting N.Y. Comp. Code R. & Regs. tit. 12 § 146-1.6), *aff'd*, 2023 WL 2395995 (2d Cir. Mar. 8, 2023).

Plaintiff alleges that throughout his employment period, he worked approximately 10 hours and 45 minutes per day for six days per week, plus two additional days per month.  *See* Mogollan Aff.  ¶¶ 4, 6-7.  He further alleges that defendants failed to pay him for an additional hour of pay at the minimum wage for those days.  *See id.* ¶ 7.  Accordingly, the Court recommends granting plaintiff's request for spread-of-hours pay as set forth in the table below:

26

**Spread-of-Hours Compensation**
**Gourmet Deli**

| Time Period | Weeks | Minimum Wage | Spread of Hours Days | Total |
|---|---|---|---|---|
| 5/14/19 - 12/31/19 | 33 | $13.50 | 6.5[17] | $2,895.75 |
| 1/1/20 - 12/31/20 | 52 | $15.00 | 6.5 | $5,070.00 |
| 1/1/21 - 12/31/21 | 52 | $15.00 | 6.5 | $5,070.00 |
| 1/1/22 - 12/31/22 | 52 | $15.00 | 6.5 | $5,070.00 |
| 1/1/23 - 8/15/23 | 32 | $15.00 | 6.5 | $3,120.00 |
| Subtotal | | | | $21,225.75 |

**Deli & Grocery**

| 8/16/23 - 12/31/23 | 20 | $15.00 | 6.5 | $1,950.00 |
|---|---|---|---|---|
| 1/1/24 - 10/31/24 | 43 | $16.00 | 6.5 | $4,472.00 |
| Subtotal | | | | $6,422.00 |
| | | | | |
| **Combined Total** | | | | **$27,647.75** |

### D.    Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages, *Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008); however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA.  *See* 29 U.S.C. § 260.  Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of such underpayments found to be due," "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 663(1).

---

[17] Plaintiff estimates one-half "spread day" per week to account for the twice per month that plaintiff worked a seventh day per week.  *See* Dkt. 29-3 (estimating 6.5 spread days per week).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (internal quotation marks and citation omitted). However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Id.*; N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith. *See Lu Fan*, 2019 WL 1549033, at *11. As this Court has calculated plaintiff's damages according to the NYLL, plaintiff is entitled to 100 percent of his unpaid wages, overtime, and spread of hours as liquidated damages. *See Ortega*, 2024 WL 4751732, at *11. Accordingly, this Court recommends awarding plaintiff **$183,354.62** ($43,940.00 (unpaid minimum wages) + $80,631.25 (unpaid overtime) + $31,135.62 (time-shaved overtime) + $27,647.75 (spread of hours)) in liquidated damages.

### E.    Statutory Damages under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule. Violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's

28

identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotation marks and citation omitted). After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000. N.Y. Lab. Law § 198(1-d).

Here, plaintiff alleges that he never received a wage notice or wage statements from the defaulting defendants at any point throughout the course of his employment. *See* Mogollan Aff. ¶¶ 11-12. Because plaintiff worked without a wage notice for each defendant, for more than 100 days, and without a wage statement for more than 20 days, this Court recommends awarding plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000** against each defendant. *See Duchitanga*, 2021 WL 7906539, at *16; *Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019), *aff'd*, 990 F.3d 251 (2d Cir. 2021).

### F.    Allocation of Liability

As discussed above, the Court recommends that Deli & Grocery (successor employer) be held jointly and severally liable for the FLSA violations of Gourmet Deli (predecessor employer), but not Gourmet Deli's NYLL violations, pursuant to successor liability. Thus, the Court calculates damages for each defendant's ownership period and calculates the portion of damages for FLSA violations committed by Gourmet Deli, for which Deli & Grocery is jointly and severally liable, during the period May 14, 2022 until August 15, 2023 (the relevant period before Deli & Grocery purchased the business). The allocation of damages for **joint and several liability** is set forth below:

29

**Joint and several liability for unpaid minimum wages**

| Period | Weeks | Paid Wage | Min. Wage | Min. Wage - Paid Wage | Hours | Total |
|---|---|---|---|---|---|---|
| 5/14/22 - 12/31/22 | 33 | $10 | $15 | $5 | 40 | $6,600.00[18] |
| 1/1/23 - 8/15/23 | 32 | $10 | $15 | $5 | 40 | $6,400.00 |
| **Total** | | | | | | **$13,000.00** |

**Joint and several liability for unpaid straight overtime**

| Period | Weeks | Paid Wage | Overtime Rate | Overtime - Paid Wage | Overtime Hours | Total |
|---|---|---|---|---|---|---|
| 5/14/22 - 12/31/22 | 33 | $10 | $22.50[19] | $12.50 | 25 | $10,312.50[20] |
| 1/1/23 - 8/15/23 | 32 | $10 | $22.50 | $12.50 | 25 | $10,000.00 |
| **Total** | | | | | | **$20,312.50** |

**Joint and several liability for time shaving**

| Period | Weeks | Overtime Rate | Overtime Hours | Total |
|---|---|---|---|---|
| 5/14/22 - 12/31/22 | 33 | $22.50[21] | 4.88[22] | $ 3,623.40 |
| 1/1/23 - 8/15/23 | 32 | $22.50 | 4.88 | $ 3,513.60 |
| **Total** | | | | **$7,137.00** |

Gourmet Deli Grill Corp. and Deli & Grocery Food Inc. are jointly and severally liable in the total amount of $40,449.50 ($13,000.00 + $20,312.50 + $7,137.00 = $40,449.50) for Gourmet Deli Grill's FLSA violations and $40,449.50 in liquidated damages.

The damages for each defendant calculated based on defendant's ownership period is set forth below:

---

[18] $5 (difference between minimum wage and actual amount paid) x 40 (hours per week) x 33 (weeks) = $6,600.

[19] *See* footnote 14, above.

[20] $12.50 (difference between overtime rate and actual wage paid) x 25 (hours per week) x 33 (weeks) = $10,312.50.

[21] *See* footnote 14, above.

[22] *See* footnote 16, above.

| Defendant | Gourmet Deli | Deli & Grocery | Total |
|---|---|---|---|
| Minimum wages owed | $42,220.00 | $1,720.00 | $43,940.00 |
| Unpaid overtime | $67,206.25 | $13,425.00 | $80,631.25 |
| Time shaving | $23,903.46 | $7,232.16 | $31,135.62 |
| Spread of Hours | $21,225.75 | $6,422.00 | $27,647.75 |
| Liquidated damages | $154,555.46 | $28,799.16 | $20,000.00 |
| WTPA damages | $10,000.00 | $10,000.00 | $183,354.62 |
| Total | **$319,110.92** | **$67,598.32** | **$386,709.24** |

**Conclusion**

For the reasons set forth above, this Court respectfully recommends:

(1) granting plaintiff's motion for a default judgment in substantial part against defendants Gourmet Deli Grill Corp. and Deli & Grocery Food Inc., and entering judgment against the defaulting defendants;

(2) awarding plaintiff damages against Gourmet Deli Grill Corp. in the total amount of **$319,110.92**, consisting of **$42,220** in unpaid minimum wages, **$67,206.25** in unpaid overtime compensation for regular hours, $23,903.46 for time-shaving overtime compensation, $21,225.75 for spread of hours, **$154,555.46** in liquidated damages, and **$10,000** in statutory damages;

31

(3) of that amount, awarding plaintiff damages against Gourmet Deli Grill Corp. and Deli & Grocery Food Inc., jointly and severally, in the amount of **$40,449.50** for Gourmet Deli Grill Corp.'s FLSA violations and **$40,449.50** in liquidated damages on that amount; and

(4) awarding plaintiff damages against Deli & Grocery Food Inc. for its own violations in the total amount of **$67,598.32**, consisting of **$1,720.00** in unpaid minimum wages, **$13,425.00** in unpaid overtime compensation for regular hours, **$7,232.16** for time-shaving overtime compensation, **$6,422.00** for spread of hours, **$28,799.16** in liquidated damages, and **$10,000** in statutory damages.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendants at their last known address and to file proof of service on ECF by **March 5, 2026**. Any objections to the recommendations made in this Report must be filed with the Honorable Nina R. Morrison within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 16, 2026.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
        March 2, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge

32